**KANSAS STATE BANK & TRUST COMPANY, Plaintiff,**

v.

**EMERY AIR FREIGHT CORPORATION d/b/a Emery Worldwide and St. Paul Fire and Marine Insurance Company, Defendants.**

No. 85–6114.

United States District Court, D. Kansas.

Jan. 12, 1987.

Thomas D. Kitch and Lyndon W. Vix, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for plaintiff.

Steven D. Gough, Kahrs, Nelson, Fanning, Hite & Kellogg, and Charles W. Harris, Curfman, Harris, Stalling & Snow, Wichita, Kan., and Condon & Forsyth, New York City, for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the motions for summary judgment of each of the parties. Defendant St. Paul Fire and Marine Insurance Company (St. Paul) seeks summary judgment against plaintiff Kansas State Bank & Trust Company (Kansas Bank), and plaintiff has filed a cross motion for the same relief against St. Paul. Defendant Emery Air Freight Corporation (Emery) has also moved for summary judgment on plaintiff's claims.

The United States Supreme Court has recently addressed the trial court's responsibility in ruling on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, — U.S. —, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A threshold inquiry of the need for a trial is conducted, and summary judgment is to be granted where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. — U.S. at —, 106 S.Ct. at 2511, 91 L.Ed.2d at 213. The court is to be concerned with the sufficiency of the evidence, not its weight. *Casper v. C.I.R.*, 805 F.2d 902, 904 (10th Cir.1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, — U.S. at —, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. There is no genuine issue for trial unless there is sufficient evidence—significantly probative or more than merely colorable—favoring the nonmoving party for a jury to return a verdict for that party. — U.S. at —, 106 S.Ct. at 2510, 91 L.Ed.2d at 212. Where there is but one reasonable conclusion as to the verdict and reasonable minds would not differ as to the import of the evidence, summary judgment is appropriate. — U.S. at —, 106 S.Ct. at 2511, 91 L.Ed.2d at 213.

The movant's burden under Fed. R.Civ.P. 56 is to make an initial showing of the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345 (10th Cir.1986). To show an absence of material fact, the movant must specify those portions of "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any." Fed.R.Civ.P. 56(c). "[C]onclusory assertions to aver the absence of evidence remain insufficient to meet this burden." *Windon*, 805 F.2d at 345 n. 7. The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in 56(c), which demonstrate a genuine issue remaining for trial. *Anderson*, — U.S. at —, 106 S.Ct. at 2511, 91 L.Ed.2d at 213. The evidence of the nonmoving party is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which

are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." (citation omitted.) *Celotex Corp. v. Catrett,* — U.S. —, —, 106 S.Ct. at 2548, 2555, 91 L.Ed.2d 265, 276 (1986).

This litigation arises from an event when plaintiff arranged for treasury receipts to be transported by defendant Emery and those treasury receipts never reached their intended destination. The cross motions of plaintiff and defendant St. Paul will be addressed first.

For purposes of their motions for summary judgment, plaintiff and defendant St. Paul have stipulated:

1. On or about August 2, 1984, plaintiff contracted with Emery Air Freight Corporation for the transport of United States Zero Coupon Treasury Receipts having a face value of $2,580,000 from Wichita to Bank of New York. The terms of these receipts were identical in all relevant respects to Coupon Treasury Receipt N. 8421–16636, a copy of which is attached as Exhibit A, to the Stipulations, except that Coupon Treasury Receipt 8421–16636 is registered in the name of plaintiff while the treasury receipts involved in this action were registered in the name of the First Boston Corporation and were restrictively endorsed to plaintiff.

2. Said treasury receipts were never received by Bank of New York.

3. As a result of the loss of said treasury receipts, plaintiff obtained a lost instrument bond from defendant St. Paul at a cost of $25,800.

4. Defendant St. Paul is the underwriter on a Banker's Blanket Bond No. 400 FY 4090 issued to the plaintiff. This bond was in effect at all times relevant to this action. A copy of Blanket Bond No. 400 FY 4090 is attached as Exhibit B to the stipulations.

5. Claim has been made twice by plaintiff to defendant St. Paul for payment under the Blanket Bond but this claim was rejected by St. Paul in letters of November 29, 1984, and November 1, 1985, copies of which are attached as Exhibits C and D, respectively, to the stipulations.

6. All jurisdictions relevant to this action have adopted provisions identical to articles 3 and 8 of Chapter 84 of the Kansas Statutes Annotated.

These motions primarily involve the construction of an insurance contract, Blanket Bond No. 400 FY 4090 (Blanket Bond). Kansas law on insurance policy construction has been often discussed. The insurance policy, like other contracts, is to be construed to effectuate the parties' intent as gleaned from the instrument as a whole and the circumstances of the parties. *American Media, Inc. v. Home Indemnity Co.,* 232 Kan. 737, 740, 658 P.2d 1015 (1983). In discerning the intent of the parties, the insurer's intent does not control, rather the test is what a reasonable person in the position of the insured would understand it to mean. *Id.* When the terms of the policy are ambiguous or uncertain, conflicting or susceptible to more than one construction, the construction that favors the insured will prevail. *American Media, Inc. v. Home Indemnity Co.,* 232 Kan. at 740, 658 P.2d 1015. If the language is clear and unambiguous, the insurance policy is to be enforced giving the terms their plain and ordinary meaning. *Id.*

For a policy to be ambiguous, it must contain language of doubtful and conflicting meaning as determined from a natural and reasonable reading. *Dronge v. Monarch Ins. Co. of Ohio,* 511 F.Supp. 1, 4 (D.Kan.1979). If the application of the rules of construction results in genuine uncertainty as to the proper one of two or more possible meanings, ambiguity exists. *Id.* Ambiguity is not to be created from the fragmentation of the contract. *Farm Bureau Mut. Ins. Co. v. Horinek,* 233 Kan. 175, 180, 660 P.2d 1374 (1983).

When the insurer intends to limit coverage otherwise provided in the policy, it should use language which clearly reveals its stated purpose. *Dronge,* 511 F.Supp. at 4; *Central Security Mut. Is. Co. v. DePinto,* 235 Kan. 331, 334, 681 P.2d 15 (1984). As a general rule, exclusions or limitations in a policy are narrowly construed on the theory that an insurer, having expressed coverage through broad

promises, assumes a duty to define any limitations to that coverage in clear and explicit terms. *Dronge*, 511 F.Supp. at 4; *Owings v. Gifford*, 237 Kan. 89, 92, 697 P.2d 865 (1985).

■ The insured has the burden to show that the loss falls within a coverage provision while the insurer has the burden to prove that the loss is excepted or excluded by a specific provision of the policy. *Dronge*, 511 F.Supp. at 4–5.

■ It is undisputed that plaintiff's loss falls within the general coverage provision, referred to as insuring clause C, which provides:

> The underwriter, in consideration of an agreed premium, subject to the Declarations, Insuring Clauses, General Agreements, Conditions and Limitations and other terms hereof, agrees to indemnify the Insured for:
>
> ....

### IN TRANSIT

> (C) Loss of Property resulting directly from robbery, common law or statutory larceny, theft, hold-up, misplacement, mysterious unexplainable disappearance, being lost or otherwise made away with, and damage thereto or destruction thereof, while the Property is in the custody of a person designated by the Insured to act as its messenger (or a person acting as messenger or custodian during an emergency arising from the incapacity of such designated messenger) and while the Property is in transit anywhere, such transit to begin immediately upon receipt of such Property by said messenger and to end immediately upon delivery to the designated recipient or its agent.

The dispute lies with whether Exclusion (s) of Section 2 of the Conditions and Limitations of the Blanket Bond is applicable, as claimed by defendant St. Paul. The exclusion provides:

> Section 2. The bond does not cover:
>
> ....
>
> (s) loss of Property while in the mail or with a carrier for hire (other than an armored motor vehicle company), except when covered under Insuring Clauses (A), (L) or (Q), *provided, however, that non-negotiable instruments while in the possession and custody of any carrier for hire for the purpose of transportation shall be deemed to be covered under Insuring Clause (C); .... (emphasis supplied.)*

In particular, the parties disagree over whether the Treasury Receipts were non-negotiable instruments as used in the emphasized portion of Exclusion (s).

Defendant insurer argues that while "negotiable" and "non-negotiable" are not defined in the Blanket Bond, "securities" is defined by the Bond in such a manner to include the Treasury Receipts. From that premise, defendant concludes that the Treasury Receipts were negotiable under K.S.A. 84–8–105 and the common law by virtue of being a security. Plaintiff contends it is unnecessary to resort to the Uniform Commercial Code (U.C.C.) since the Blanket Bond provides a definition of "Negotiable Instrument" which is controlling between the parties as to coverage. Section 1 of the Conditions and Limitations defines relevant terms in the Bond including "Negotiable Instrument" as:

> (1) Negotiable Instrument means any writing
>
> (1) signed by the maker or drawer; and
>
> (2) containing an unconditional promise or order to pay a sum certain in Money and no other promise, order, obligation or power given by the maker or drawer; and
>
> (3) is payable on demand or at a definite time; and
>
> (4) is payable to order or bearer.

Plaintiff concludes that the Treasury Receipts do not meet this definition as no "order" or "bearer" language is contained in them.

In response to plaintiff's use of the Bond definition of "Negotiable Instrument," defendant St. Paul notes that this definition is the same as the Article 3 provision of the U.C.C. which describes "Commercial Paper." St. Paul considers the definition and

use of "Negotiable Instrument" to be simply a property classification without any significance to the matter of negotiability under Exclusion (s). St. Paul also argues a contrary interpretation would be unreasonable in that the risk of negotiable Article 3 instruments would be excluded under the policy while a similar risk of negotiable Article 8 instruments would not be excluded.

The Blanket Bond is not ambiguous. Considering the policy as a whole, a reasonable insured would understand that the particular definition of negotiable instrument in the Bond would be applicable and controlling in any reading of Exclusion (s). It is unreasonable and unfair to require an insured to understand that the term, "Negotiable Instrument," when capitalized is a property classification as defined by the Bond and that when it appears in an exclusion as "non-negotiable instrument," it is to be defined as set forth in the U.C.C. St. Paul had the capacity and tools with which to define negotiable instrument as to include both Article 3 and Article 8 instruments. Even assuming the U.C.C. is applicable to the bond, as contended by St. Paul, the fact that "Negotiable Instrument" is defined to restrict applicability to Article 3 instruments indicates the parties intended to alter by agreement the applicability of the U.C.C. To find in favor of St. Paul's construction of the Bond, the court would be placed in the untenable position of requiring the insured to discern the undisclosed, subjective intent of the insurer. The Court will enforce the Bond on its terms and thereby finds that the definition of negotiable as used in Exclusion (s) is the same as that found in the definition section of the Bond.

■ Defendant St. Paul also contends that plaintiff has not shown that the Treasury Receipts do not satisfy the definition of negotiable instrument contained in the Bond. Specifically, St. Paul notes that under the terms of K.S.A. 84–3–110(1), the treasury receipts have "order" language and meet the Bond definition. St. Paul has taken an improper posture in contending that plaintiff has the burden of proving

that its loss is not covered by Exclusion (s). The court is not persuaded that the mere use of "assigns" satisfies the definition of "Negotiable Instrument" as found in the Bond, even if K.S.A. 84–3–110(1) is applicable. Defendant has not sustained its burden of showing that the lost Treasury Receipts were covered by Exclusion (s) of the Bond.

St. Paul's final contention is that if plaintiff's loss is covered under the Blanket Bond, a $10,000 deductible is applicable. This contention is supported by the clear language of the Bond, and is apparently not contested by plaintiff.

The other motion before the court is Emery's motion for summary judgment against plaintiff. For purposes of this motion, and the court's ruling, the following facts are uncontroverted.

1. This action arises out of the loss of a shipment of United States Treasury Bonds which was to be transported by defendant Emery from Wichita, Kansas to New York City in August, 1984.

2. Plaintiff Kansas State Bank & Trust Co. has alleged that it sustained damages in amount of $25,800 as a result of this loss.

3. It is believed that a former employee of defendant Emery, John Behar, may have pilfered plaintiff's shipment in question.

4. The document evidencing defendant Emery's contract of carriage with plaintiff Kansas Bank is Emery airbill No. 21779.

5. The lost consignment was described on the contract of carriage by plaintiff merely as "printed material" rather than as "negotiable securities."

6. The "Terms and Conditions of Contract" on the back of Emery airbill no. 21779 expressly state at paragraph 6 that "Emery is not liable for any loss, damage, delay, misdelivery or non-delivery caused by the act, default or omission of this shipper ... including but not limited to improper or insufficient packing, securing, marking or addressing or failure to observe any of the rules relating to shipments not acceptable for transportation...."

7. The "Terms and Conditions of Contract" on the back of Emery airbill No. 21779 also state that "the shipper agrees that carriage is subject to the Terms and Condition of Contract stated herein and those Terms and Conditions in the Emery Service Guide in effect on the date of shipment which are incorporated by reference and made a part of this contract...."

8. The Emery Service Guide on the date of this shipment provided under a heading labelled in bold letters "Shipments Not Acceptable":

SHIPMENTS NOT ACCEPTABLE

The following shipments will NOT be accepted under any circumstances:

F. Money, currency, bonds, bills of exchange, deeds, promissory notes, negotiable securities, or stock certificates.

9. In this action, plaintiff Kansas Bank has admitted that it did not declare a value for the shipment when it executed the contract of carriage, and that plaintiff Kansas Bank thereby secured a reduced shipping rate.

Defendant Emery contends plaintiff violated the Terms and Conditions of the Contract when it shipped the negotiable securities, an unacceptable shipment, and inaccurately described them as "printed material." As a result, Emery considers plaintiff as having assumed the risk that Emery would be absolved of any liability if the shipment were lost. Kansas Bank does not take issue with the question of whether it violated the terms and conditions of the contract as written, but argues that these contractual provisions were waived by Emery's local representative thereby estopping it from enforcing the same.

Donna Moore, a trust clerk with Kansas Bank, avers that on March 2, 1982, she called Jerry Meyer at Emery's Wichita office for assistance in completing the Emery airbill. She informed him that the matters being shipped were securities such as stocks and bonds. Meyer instructed her to describe the securities as "printed material" for security reasons. Ms. Moore also said that Meyer never told her that securities were an unacceptable shipment. Kansas Bank continued this practice of shipping securities labelled as "printed material," including the shipment on August 2, 1984, which is the one in question.

Emery responds that no waiver has occurred since the first paragraph of the Terms and Conditions of the Contract provides: "In tendering the shipment for carriage the shipper agrees to these TERMS AND CONDITIONS OF CONTRACT which no agent or employee of the parties may alter." In addition, Emery refers to its Service Guide which states at Page 113: "No employee, agent or representative of Emery is authorized or empowered to vary or modify any terms or conditions of the airbill."

The court finds no factual basis and little merit to plaintiff's waiver argument. The contract clearly stated that negotiable securities were unacceptable shipments. The contract absolves Emery of liability for any loss caused by shipper's improper or insufficient marking or failure to observe any of the rules relating to shipments not acceptable for transportation. Plaintiff asks the court to consider these express provisions to have been voluntarily and intentionally waived through one phone call nearly two years before the shipment at issue. The fact standing alone that plaintiff continued to send packages with the description of "printed material" does not evidence any further intent or actions on the part of defendant to waive those provisions.

The express contract provision nullifying any authority of an agent or representative of Emery to alter or modify any term or condition clearly limits the actual authority of Emery's agents and makes it unreasonable to rely on contrary representations of an agent. The clarity with which Emery stated the terms and conditions compels this court to find that the provisions were not waived by a local representative's actions over two years before the shipment in question.

IT IS THEREFORE ORDERED that plaintiff is granted summary judgment against defendant St. Paul on the blanket

bond subject to the applicable deductible of $10,000;

IT IS FURTHER ORDERED that defendant Emery is granted summary judgment against plaintiff.