**COLUMBIAN FINANCIAL CORPORATION, Plaintiff,**

v.

**BUSINESSMEN'S ASSURANCE COMPANY OF AMERICA, Defendant.**

Civ. A. No. 90–4033–S.

United States District Court, D. Kansas.

July 18, 1990.

Gerald L. Goodell, Michael W. Merriam, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan., for plaintiff.

Charles N. Henson, Anne L. Baker, Davis, Wright, Unrein, Hummer & McCallister, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on cross-motions for summary judgment. Plaintiff filed this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), seeking a declaratory judgment "interpreting the provisions of the specific stop loss medical insurance policy issued by Defendant, interpreting such policy to require Defendant to pay covered expenses for an insured under the policy under the extension of benefits provisions after coverage has terminated, without regard to any specific stop loss deductible from and after July 1, 1986, and that Plaintiff is not responsible or liable for the amount of any specific stop loss deductible relative to the covered expenses of [the insured employee] Ms. Darr from and after July 1, 1986." Plaintiff's Complaint ¶ 9.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of material fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing an absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

## STATEMENT OF FACTS

The court finds that the following facts are uncontroverted. On July 1, 1984, plaintiff Columbian Financial Corporation ("Columbian") and defendant Businessmen's Assurance Company of America ("BMA") entered into an Administrative Services Only Agreement which established the "terms and conditions under which the Administrator [BMA] agrees to provide administrative services with respect to the Employer's Health Benefit Plan [the Plan]." The Administrative Services Only Agreement provided as follows:

> The Employer shall establish a Plan Account as a depository for funds to be used to make Plan payments payable to plan participants. The Employer shall authorize the Depository to recognize signatures of the Administrator's employees as designated in writing to the Employer by a Vice President of the Administrator to draw claim checks upon the Employer payable from the Plan Account. It shall be the Employer's responsibility to maintain funds in this spe-

cial account sufficient to cover checks validly issued.

On November 1, 1984, Columbian adopted a health benefit plan (hereinafter called the "Plan") for its covered employees. On November 1, 1984, Columbian and BMA entered into a Specific Stop Loss Medical Insurance Policy which incorporated the provisions of the Plan by reference. Under the terms of the Plan and the BMA Policy, the Plan was self-funded by Columbian such that Columbian agreed "to pay the benefits in this Plan up to $10,000 per Covered Person each Benefit Year." Pursuant to the BMA Policy, BMA agreed to pay the remaining benefits due once "the Specific Stop Loss Deductible [defined to be $10,000] has been met with respect to a Covered Person during a Benefit Year." The BMA Policy and the Plan define "Benefit Year" as "a period of twelve months starting July 1 and ending June 30."

Columbia's employee, Linda Darr, suffered personal injury and incurred covered expenses as defined by the Plan from June 6, 1986 continuing through July 21, 1986. There is no dispute between the parties pertaining to the expenses incurred by Ms. Darr between June 6, 1986 and June 30, 1986 (inclusive). Effective June 30, 1986, Columbia terminated the Plan for all employees, terminated the BMA Specific Stop Loss Policy, and changed employee health care benefit coverage to another insurer, Blue Cross and Blue Shield. Ms. Darr incurred continuing expenses of $16,842.69 from and after July 1, 1986 to July 21, 1986 (inclusive). A proof of loss with respect to such expenses was submitted to BMA in its capacity as Plan Administrator within the 90–day period required by the Plan.

Pursuant to the Extension of Medical Expense Benefits of the Plan, "[i]f a covered person is totally disabled, when that person's coverage terminates, benefits may be extended without payment of contributions" under certain conditions. "Benefits are not extended under [the Extension of Medical Expense Benefits provision] past the earliest" of several dates, including the following: "The date the Covered Person is covered under any other group policy or employer-funded plan"; and "the date total disability [as defined by the Plan] ends."

On January 6, 1987, in response to a request by Columbian concerning Linda Darr's group coverage, BMA stated to Columbian that it was its understanding that Blue Cross, the new carrier selected by plaintiff, would be liable for any expenses incurred by Ms. Darr beginning July 1, 1986. By letter dated January 15, 1987, a copy of which was sent to Columbian, BMA informed Ms. Darr of its position concerning anticipated surgery in relation to the accident which occurred while the BMA coverage was in force, and informed her of their understanding that BMA would have no further financial liability for any expenses incurred after June 30, 1986, because of the termination of the BMA policy which was replaced with Blue Cross/Blue Shield group coverage.

Subsequently, after it was determined that Blue Cross and Blue Shield coverage did not exist for the services in issue, defendant BMA made a payment of $6,842.62 to DePaul Hospital under the Extension of Medical Expense Benefit provision of the Plan. In a letter to the Vice President and General Counsel of Columbian, BMA stated:

> We are now approving the insured's portion of benefits totaling $6,842.69 to the DePaul Hospital under the extension provision of the contract. However, since the 'Administrative Services Only Agreement' terminated June 30, 1986, we are unable to issue the check from your account for the self-funded portion of the Plan which provides the first $10,000.00 benefits beginning each July 1.

Columbian subsequently paid the $10,000 to health care providers and has brought this action to recover such amount from defendant. On April 12, 1989, Columbian brought suit against BMA in the District Court of Shawnee County, Kansas. After limited discovery, Columbian filed a cross-motion for summary judgment, and defendant moved to dismiss for lack of subject matter jurisdiction and for summary judgment. By Memorandum Decision and order dated January 29, 1990, District Judge

Terry L. Bullock granted BMA's motion to dismiss, finding that the action was one brought under 29 U.S.C. § 1132(a)(3) by an ERISA Plan fiduciary for relief in enforcing the terms of the Plan and therefore federal jurisdiction was exclusive pursuant to 29 U.S.C. § 1132(e). Judge Bullock held that the Shawnee County District Court lacked subject matter jurisdiction and dismissed the action. Columbian did not appeal.

## DISCUSSION

In its motion for summary judgment, BMA contends that Columbian's action should be dismissed because it was filed subsequent to the expiration of the statute of limitations and because it was filed subsequent to the expiration of the period for filing legal actions provided in the Specific Stop Loss Policy. The court finds that BMA's statute of limitations argument is without merit. As Columbian points out, Section 1113 of Title 29, United States Code, which provides a three-year statute of limitations applies to actions for breach of fiduciary duties "under this part," which refers to part 4 of Subtitle B under Subchapter 1 of ERISA. By contrast, this action is brought under part 5 of Subtitle B. Further, courts have held that there is no statutory period of limitation for actions under § 1132; rather, the court is to apply the "most appropriate state statute of limitations." *See Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan*, 713 F.2d 247, 251 (7th Cir.1983) (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975)). Generally, courts have applied the state statute of limitations period for actions on written contracts to § 1132 actions. *See id.; see e.g., Miles v. New York State Teamsters Conf. Pension & Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Abbott v. Drs. Ridgik, Steinberg & Assoc., P.A.*, 609 F.Supp. 1216, 1217–18 (D.N.J.1985). The court finds that K.S.A. 60–511(a)(1) (providing a five-year limitations period for actions on written contracts), is the most appropriate limita-

tions to apply in this case. Thus, plaintiff's action, filed February 9, 1990, is clearly timely.

Defendant BMA also argues that the provisions of the Specific Stop Loss Policy bar this action. The Specific Stop Loss Policy provides as follows:

**LEGAL ACTIONS.** No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy. No such action may be brought after three years from the time written proof of loss is required to be given.

Contractual limitations periods are generally considered valid under Kansas law. *See Coates v. Metropolitan Life Ins. Co.*, 515 F.Supp. 647, 649–50 (D. Kan.1981) (citations omitted). An insurer may, however, by its acts or conduct, be estopped from asserting a limitation provision as a defense to an action on the policy. *Id.* at 650. "The particular facts of each case will determine whether or not the equitable doctrine of estoppel should be applied, the decision resting within the court's discretion." *Id.* (citing *Aimonetto v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 365 F.2d 599, 600 (10th Cir.1966)).

Assuming that the above-quoted contractual limitations period applies, the court finds that under the uncontroverted facts BMA is estopped from asserting the limitations period as a defense to this action. Plaintiff's complaint was filed February 9, 1990. BMA contends that under the contractual limitations provision, any legal action was required to be brought within three years from the time written proof of loss was required to be given. Thus, BMA argues that any legal action brought in connection with Linda Darr's July 1986 loss, written proof of which was timely filed before October 20, 1986, was contractually required to be filed by October 20, 1989. As of February 12, 1987, however, BMA still had not determined whether it had any liability on Ms. Darr's claim, because it believed that Ms. Darr might be covered by Blue Cross and Blue Shield. In that February 12, 1987 letter to Mr. Amrein, Vice President and General Counsel

for Columbian, BMA did not deny coverage but basically assumed a negotiation posture, stating in part:

> When Blue Cross clarifies the date Ms. Darr becomes covered under your new plan and determines correct benefits for the balance of her expenses, BMA will be able to determine possible liability under the total disability extension. We hope to hear from Blue Cross shortly. If Columbian Corporation can encourage Blue Cross to respond to BMA quickly, we will appreciate it.
>
> Hopefully, we can resolve this situation to everyone's satisfaction. If you would like to discuss any points in this letter, please feel free to call me....

The current dispute did not form until BMA's March 25, 1987, letter to Columbian in which BMA approved the insured's portion of the benefits but stated that it would not be paying the first $10,000 in benefits.

As this court has previously stated, estoppel may be applied "where there have been negotiations toward settlement and the insurer has induced the insured to suspend or delay proceedings by lulling the insured into the reasonable belief that his claim would be settled." *Id.* The court finds that the February 12, 1987 letter from BMA estops BMA from asserting that the contractual limitations period began to run prior to that date, which is itself less than three years before the present complaint was filed. Thus, the court finds that the limitations period was effectively tolled until March 25, 1987, when BMA notified Columbian that it was no longer negotiating, but rather had determined that it would pay the insured's portion but deny payment of the first $10,000 in benefits. *See also* 20A J. Appleman, *Insurance Law and Practice* § 11635, at 505 (1980). The court therefore finds that defendant's motion for summary judgment cannot be granted based on either statutory or contractual limitations periods.

■ The next question before the court is that of the appropriate standard of review. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court applied principles of trust law in holding that an administrator's interpretation of ERISA plan language is subject to *de novo* review unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or construe the terms of the plan. 109 S.Ct. at 952. Although *Firestone* involved an action by a beneficiary to recover benefits under 1132(a)(1)(B), and not, as in the present case, an action under 1132(a)(3), the court finds that the general principles expressed in *Firestone* apply here as well. *See In re White Motor Corp.,* 99 B.R. 783, 789 (Bankr.N.D.Ohio 1989) (stating that the *Firestone* analysis applies to actions under other sections of 1132(a)). The court also finds that the plan language in this case does not by its terms give BMA discretionary authority to determine eligibility or construe the plan. Therefore, a *de novo* standard of review applies in this case.

■ Turning finally to the merits of the dispute, the court is asked to interpret the specific stop loss policy and specifically, the extension of benefits provision to determine whether Columbian is required to pay a $10,000 deductible in connection with Linda Darr's disability. Under Kansas law, insurance policies are to be enforced in accordance with their terms, if unambiguous. *See Dronge v. Monarch Ins. Co. of Ohio,* 511 F.Supp. 1, 4 (D.Kan.1979); *American Media, Inc. v. Home Indem. Co.,* 232 Kan. 737, 658 P.2d 1015, 1018 (1983). A contract is ambiguous when, after application of relevant rules of interpretation, "words intended to express the meaning and intent of the parties may be construed to reach more than one possible meaning." *Anderson v. Nationwide Life Ins. Co.,* 6 Kan.App.2d 163, 166, 627 P.2d 344, 346 (1981) (citation omitted).

In this case, the court finds that the policy in question is ambiguous regarding the parties' respective duties under the extension of benefits provision. Although the provision states that benefits are extended "without payment of contributions" after coverage terminates, the word "contributions" is ambiguous, and could mean only payments by the individual (as defen-

dant urges) or payments from either the individual or the employer (as plaintiff urges). The policy does not specifically state whether the employer's deductible of $10,000 per covered person per benefit year is required when benefits are paid under the extension of benefits provision after a contractual benefit year has ended. Neither the extension of benefits provision nor anything else in the relevant documents, including the Administrative Services Agreement, the Health Benefit Plan and the Specific Stop Loss Medical Insurance Policy, definitively resolves the question of whether Columbian is liable for the $10,000 deductible under the situation presented in this case.

Under Kansas law, "[w]here the terms of a policy of insurance are ambiguous or uncertain, conflicting or susceptible of more than one construction, the construction most favorable to the insured must prevail. Since the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured." *American Media, Inc.*, 658 P.2d at 1018. Given the ambiguity of the specific stop loss policy and the extension of benefits provision, the court finds that, under Kansas law, plaintiff's interpretation must prevail. Therefore, plaintiff's motion for summary judgment will be granted; accordingly, defendant's motion for summary judgment will be denied.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion for summary judgment is granted.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is denied.