**B & K MECHANICAL, INC., Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, National Council on Compensation Insurance, Inc., and the Travelers Indemnity Company, Defendants.**

No. CIV.A. 97–4008–DES.

United States District Court, D. Kansas.

Dec. 21, 1998.

Justice B. King, Fisher, Patterson, Sayler & Smith, Topeka, KS, for B & K Mechanical, Inc., plaintiff.

Lynn W. Hursh, Douglas R. Richmond, Gerald A. King, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for National Council on Compensation Insurance, Inc., Travelers Indemnity Company, Federal Insurance Company, defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the portion of Counterclaimant Federal Insurance Company's Motion for Summary Judgment (Doc. 18) which was taken under advisement in the court's Memorandum and Order dated June 2, 1998.

## I. INTRODUCTION

B & K Mechanical, Inc. ("B & K"), is an Americus, Kansas, based company which performs industrial construction and millwork in various states. B & K sought workers' com-

pensation insurance through defendant, National Council on Compensation· Insurance, Inc. ("NCCI"), in January of 1995. NCCI administers workers' compensation insurance assigned risk plans in several states, including Kansas and Iowa. At the time that B & K first sought workers' compensation insurance, it operated from its principal office in Americus, Kansas, and all of its job sites were located in Iowa. Defendant and counterclaimant Federal Insurance Company ("Federal") is one of the insurers to which NCCI assigns insureds under the Iowa Workers' Compensation Insurance Plan ("Iowa Plan").

Shortly after B & K was incorporated in January of 1995, Robert Howard, B & K's president and sole shareholder, sought workers' compensation insurance in the voluntary market. When he was unable to obtain insurance in the voluntary market because the company had no loss experience history, B & K was forced to seek workers' compensation insurance through the involuntary market and submitted an application to NCCI.

Although B & K initially applied with NCCI through the Kansas assigned risk pool, this application was referred to Iowa because all of B & K's job sites were located in Iowa at that time. B & K questioned the assignment to Iowa, but was informed that NCCI rules required the assignment. Because B & K estimated payroll only in Iowa, NCCI bound the risk with Federal through the Iowa Plan. Federal then issued a workers' compensation policy to B & K for Iowa for the period from January 26, 1995, to January 26, 1996 (the "1995–1996 policy"). However, Federal was not able to issue a policy which covered B & K's clerical workers in Kansas. B & K was later able to obtain workers' compensation insurance for its clerical workers in Kansas through NCCI.

The 1995–1996 policy lapsed at the expiration date. Federal later issued a new workers' compensation policy for the period from February 9, 1996, to January 26, 1997. The matter now before the court relates to a coverage dispute involving the 1996–1997 policy and Federal's retention of a portion of the premium for the 1996–1997 policy. Other pertinent facts will be discussed as necessary.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing suffi-

cient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION

The only remaining issue before the court is whether B & K is entitled to apply the amount retained by Federal on the 1996–97 policy to off-set the amount which is owed to Federal on the 1995–96 policy.

■ The construction of an insurance contract is a question of law. *U.S. Fidelity & Guar. Co. v. Morrison Grain Co., Inc.,* 734 F.Supp. 437, 442 (D.Kan.1990), *aff'd,* 999 F.2d 489 (10th Cir.1993); *Wing Mah v. United States Fire Ins. Co.,* 218 Kan. 583, 545 P.2d 366, 369 (Kan.1976). If the relevant facts are admitted, the court may decide whether they come within the terms of the contract. *U.S. Fidelity,* 734 F.Supp. at 442; *Wing Mah,* 545 P.2d at 369.

■ An insurance contract, like any other contract, must, if possible, be construed so as to give effect to the parties' intent. *Westchester Fire Ins. Co. v. City of Pittsburg, Kansas,* 768 F.Supp. 1463, 1467 (D.Kan. 1991); *Catholic Diocese of Dodge City v. Raymer,* 251 Kan. 689, 840 P.2d 456, 459 (1992); *Farm Bureau Mut. v. Old Hickory*

*Cas.,* 248 Kan. 657, 810 P.2d 283, 286 (1991). This is to be accomplished by considering the policy as a whole and taking into account the circumstances of the parties. *Coleman Co., Inc. v. California Union Ins. Co.,* 960 F.2d 1529, 1532 (10th Cir.1992); *Reynolds v. S & D Foods, Inc.,* 822 F.Supp. 705, 707 (D.Kan. 1993).

■ Where an insurance contract is unambiguous, the court must enforce the contract as made and not make another contract for the parties. *Catholic Diocese of Dodge City,* 840 P.2d at 459; *Farm Bureau Mut.,* 810 P.2d at 286. The court must take unambiguous language in its plain, ordinary, and popular sense. *Wing Mah,* 545 P.2d at 369. Where there is no ambiguity, there is no need for either judicial interpretation or the application of liberal rules of construction. *American Media, Inc. v. Home Indem. Co.,* 232 Kan. 737, 658 P.2d 1015, 1019 (1983). That is, the court must enforce an unambiguous contract according to its terms. *Id.*

Like any contract, an insurance contract may be ambiguous. However, the court should not strain to create an ambiguity where, in common sense, none exists. *See, e.g., Miner v. Farm Bureau Mut. Ins. Co., Inc.,* 17 Kan.App.2d 598, 841 P.2d 1093, 1105 (1992) (noting that "[i]t [is] not a function of the trial court to create an ambiguity requiring an interpretation favorable to the insured when no ambiguity exist[s]"); *Bell v. Patrons Mut. Ins. Ass'n,* 15 Kan.App.2d 791, 816 P.2d 407, 409 (1991) (noting that the court should not strain to create ambiguity).

■ "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Catholic Diocese of Dodge City,* 840 P.2d at 459; *Patrons Mut. Ins. Ass'n v. Harmon,* 240 Kan. 707, 732 P.2d 741, 745 (1987). Ambiguity does not arise until the application of the rules of interpretation to the face of the contract leaves it uncertain which of two or more meanings is proper. *Id.*

■ Where a contract is ambiguous, the construction most favorable to the insured

prevails. *American Media, Inc.*, 658 P.2d at 1019; *Wing Mah*, 545 P.2d at 369. This is so because the insurer, as the one who prepared the contract, must suffer the consequences of failing to make the terms clear. *Westchester Fire*, 768 F.Supp. at 1467. *See also Dronge v. Monarch Ins. of Ohio*, 511 F.Supp. 1, 4 (D.Kan.1979) (comparing insurance contracts to adhesion contracts); *Gowing v. Great Plains Mut. Ins. Co.*, 207 Kan. 78, 483 P.2d 1072, 1074–75 (1971) (comparing insurance contracts to adhesion contracts).

 Even though ambiguous, the language of the contract still must be construed, if possible, in a manner that gives effect to the intentions of the parties. *Dronge*, 511 F.Supp. at 4. However, the test is not what the insurer subjectively intended the terms to mean, but rather what a reasonable person in the insured's position would have understood the disputed terms to mean. *Westchester Fire*, 768 F.Supp. at 1467; *Dronge*, 511 F.Supp. at 4; *Am. Media, Inc.*, 658 P.2d at 1019.

Federal contends that B & K could not cancel the policy "flat" because the insurer-insured relationship is contractual. Therefore, Federal argues that rescission was only available to B & K if there had been a material breach and the failure to perform was so substantial as to defeat the object of the parties in making the agreement in the first place. *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, 856 P.2d 111, 115 (1993). Federal asserts that B & K did not have a sufficient basis to rescind the insurance contract.

B & K, on the other hand, argues that it properly canceled the policy "flat," making the policy ineffective as of the date of its inception, because "Federal provided *no coverage at all* to B & K for the 1996–1997 policy year." (B & K's Mem. in Supp. of Set–Off for Premium Retained by Federal Ins. Co. for the 1996–1997 Policy Period at 4). B & K asserts that it took this action as soon as it discovered that the policy did not provide coverage for B & K's workers in Kentucky. B & K further asserts that the Kentucky coverage was of primary importance to B & K and that B & K would never have renewed the policy without the cover-

age. B & K argues that Federal misrepresented the coverage that would be provided by the 1996–1997 policy because Federal did not specifically inform B & K that Federal could no longer write 3.C coverage for Kentucky.

The resolution of this issue centers around the differences between "3.A. coverage" and "3.C. coverage." The policy provides coverage pursuant to the workers' compensation law of the states listed in section 3.A. of the information page. In this case, the only state listed in section 3.A. was Iowa. However, the policy can also provide some coverage for states listed under section 3.C. of the information page.

The sections of the policies relevant to this case include the following.

From the "General Section" of the policy:

**E. Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

From "Part Three—Other States Insurance" of the policy:

**A. How This Insurance Applies**

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

### B. Notice

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

From "Part Five—Premium" of the policy:

### A. Our Manuals

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

■ The court cannot agree with B & K's arguments. The facts of this case indicate the renewal for the 1996–1997 policy only listed Iowa as a 3.A. state. The court notes that, even though Kentucky had been listed as a 3.C. state on the 1995–1996 policy, B & K had never informed Federal that it had begun work in Kentucky. Since B & K was already working in Kentucky, it would have needed 3.A. coverage; however, B & K never sought 3.A. coverage for Kentucky. In addition, B & K had a professional insurance broker assisting it, which had been sent a notice that Federal could no longer write insurance in Kentucky. Therefore, the court finds that B & K was on notice that Kentucky was not included on the 1996–1997 policy at the time it received the renewal. The court further finds B & K's argument that it did not know, and would not have renewed the policy if it had known, that Kentucky would not be covered under the 1996–1997 policy to be without merit.

B & K also argues that the 1996–1997 policy did not provide it with any coverage. The court finds that this argument is also without merit. Under the terms of the policy, any employees hired in Iowa but working in Kentucky would be able to recover Iowa benefits for any injuries they received. In fact, Federal has submitted a copy of a claim form filed on a B & K employee under the 1996–1997 policy. Clearly, B & K did receive coverage under the 1996–1997 policy.

B & K further asserts that there was a mutual mistake of fact as to what coverage was included in the contract and that this would allow B & K to rescind the contract, or cancel the policy "flat." As discussed above, the court finds that there was no mutual mistake of fact. Although B & K may have been confused regarding the coverage to be provided, this is an issue that should have been addressed with the insurance broker. *See Albers v. Nelson*, 248 Kan. 575, 809 P.2d 1194, 1198 (1991) (stating that "in the absence of fraud, a unilateral mistake will not excuse nonperformance of a contract"). There is nothing to indicate that Federal was mistaken with respect to the coverage that would be provided, nor is there anything to indicate that Federal fraudulently misrepresented what coverage would be provided. *See id.* (stating that "the fact that a party signs a contract and does not know its contents is not alone sufficient to permit that party to void it"). Therefore, the court finds that B & K has not shown that there was a material breach or that the failure to perform was so substantial as to defeat the object of the parties in making the agreement in the first place. *See Federal Land Bank of Wichita*, 856 P.2d at 115. Thus, B & K was not entitled to rescind the contract, or, in other words, cancel the policy "flat."

B & K also argues that it reasonably expected the policy to be renewed with the same coverage as provided under the 1995–1996 policy. As discussed above, the court finds that B & K had notice that the policy would not have exactly the same coverage. Again, B & K's broker had been informed that Federal could no longer write insurance in Kentucky because Kentucky had changed to a state fund. Therefore, this argument is also without merit.

In conclusion, the court finds that there is no genuine issue of material fact. The court further finds that there is no ambiguity in the terms of the contract. Finally, the court finds that B & K is not entitled to a set-off in the amount retained by Federal as premium for the 1996–1997 policy.

**IT IS THEREFORE BY THE COURT ORDERED** that the Counterclaimant Federal Insurance Company's Motion for Summary Judgment (Doc. 18) is granted on the sole remaining issue relating to the premium retained on the 1996–1997 policy.

**IT IS FURTHER ORDERED** that the court's Memorandum and Order dated June 2, 1998, shall be corrected to replace the citation to "22 U.S.C. § 2201" with the citation "28 U.S.C. § 2201."