No. 35,401

RICHARD T. BURKS, JR., *Appellee,* v. R. G. ALDRIDGE, *Defendant,* LIBERTY MUTUAL INSURANCE COMPANY, *Appellant.*

No. 35,402

ROY C. RAGLAND, *Appellee,* v. R. G. ALDRIDGE, *Defendant,* LIBERTY MUTUAL INSURANCE COMPANY, *Appellant.*

No. 35,403

FRANK G. MELTON, *Appellee,* v. R. G. ALDRIDGE, *Defendant,* LIBERTY MUTUAL INSURANCE COMPANY, *Appellant.*

(121 P. 2d 276)

Opinion filed January 24, 1942.

*Edwin S. McAnany, Thomas M. Van Cleave, Willard L. Phillips, Bernhard W. Alden, Patrick B. McAnany* and *Thomas M. Van Cleave, Jr.*, all of Kansas City, for the appellant.

*Joseph Cohen,* of Kansas City, for the appellees.

The opinion of the court was delivered by

HOCH, J.: Each of the three cases here consolidated for review presents the same question. What is said about one applies equally to the others.

In an action founded on negligence, plaintiff sought to recover damages for personal injuries received in an automobile accident. The defendants were a contractor engaged in a highway construction, and his insurance carrier. The insurance carrier demurred to the petition. From an order overruling the demurrer this appeal was taken. It is stated that the question is whether the insurance company was properly joined in the action. That question, however, turns upon the issue of whether the petition stated a cause of action against the insurance carrier, founded upon direct liability to plaintiff prior to judgment against the contractor.

For ten or twelve miles westward from Kansas City there is a four-lane concrete highway over which U. S. highways 24 and 40 are routed together. At the point where the four-lane highway ends the two routes turn north. The defendant contractor, R. G. Aldridge, had a contract with the state highway commission to construct, beginning at that point, a westward extension of the main highway. Preliminary grading of the dirt road and other work, under the contract, was under way. Late in the evening of October 17, 1940, plaintiff, who had left Hodgenville, Ky., together with the other plaintiffs, in an automobile on the morning of the same day, reached the point where the new highway was to begin and where the existing highway makes a sweeping curve to the north. Instead of following the paved highway to the north they continued straight west onto the dirt road under construction, proceeded for some distance, ran into a ditch and suffered the injuries complained of.

The petition alleged the contract and that the work was being done under it; that the contractor had negligently failed to place a barricade at the west end of the paved highway of sufficient size to be readily observable, and to place a light thereon as a warning to westbound travelers not to proceed onto the highway under construction. The allegations here pertinent relative to the insurance company were as follows:

"Plaintiff further states that under the provisions and terms of the contract of the said R. G. Aldridge with the said state highway commission of the state of Kansas for the doing of said grading work, the said defendant, R. G. Aldridge, agreed as follows: *'The contractor shall carry liability insurance to protect the public from injuries by reason of the carrying on of the work to which these specifications apply . . .'*

"Plaintiff further states that in conformity with said provisions of his said contract, the said R. G. Aldridge contracted with the defendant, Liberty Mutual Insurance Company, a corporation, whereby and by the terms whereof the said Liberty Mutual Insurance Company issued its public liability insurance policy, *the number of which and the extent of the liability of which are unknown to this plaintiff,* and by the terms of said public liability insurance policy, the said Liberty Mutual Insurance Company *agreed to protect the public, including this plaintiff, from injuries arising out of the said grading. work performed by the defendant, R. G. Aldridge."* (Italics supplied.)

In determining the instant issue we are not unmindful of the established rule, urged by appellee, that as against demurrer, a pleading is to be liberally construed and all reasonable inferences and intendments indulged in its favor. This does not mean, of course, that plain averments are to be modified or that the pleader is not bound by them.

We first note that several causes of action may be united in the same petition, but only in case they affect all the parties to the action (except in actions to enforce mortgages or other liens). (G. S. 1935, 60-601.) Also, that under the present code of civil procedure, misjoinder of causes of action constitutes a ground for demurrer. (G. S. 1935, 60-705, § 4.)

As against the contractor the action was founded on his alleged negligence. As against the appellant it was founded on the alleged contract of insurance. Ordinarily, actions in tort and on contract may not be joined. (1 Am. Jur. 464,. § 75; 1 C. J. S. 1255, § 93; *Hoye v. Raymond,* 25 Kan. 665; 1 Bancroft's Code Pleading, 213, § 110.) An issue of misjoinder, arising out of facts strikingly similar to those here involved, was presented in the case of *Rakestraw v. State Highway Comm.,* 143 Kan. 87, 53 P. 2d 482, wherein a road contractor and the state highway commission were joined as defendants in an action for damages for injuries alleged to have been caused by a defective highway. It was held that the causes of action were improperly joined, inasmuch as the liability, if any, of the highway commission was wholly statutory, while that of the contractor was grounded on common-law negligence. The same reasoning obviously applies to an attempted joinder of actions *ex delicto*

and *ex contractu.* Certainly such actions cannot be joined unless it can be said that both "affect all the parties" within the meaning of the code provision, above.

Appellee urges, however, that under the authority of *Dunn v. Jones,* 143 Kan. 218, 53 P. 2d 918, he had the right of direct action against the insurance carrier immediately following the accident, as well as against the contractor, and that having such right of direct action against both there was no misjoinder. In support of that contention he relies principally upon *Twichell v. Hetzel,* 145 Kan. 139, 64 P. 2d 557, in which joinder was sanctioned.

*Dunn v. Jones,* hereinafter referred to as the Jones case, dealt with the liability of insurance carriers who furnish liability insurance to motor carriers under the statutory provision which requires such policies precedent to the issuance of a certificate or license under the public motor carrier act (G. S. 1935, 66-1,128). The statute there construed provides not merely for a liability insurance policy, prior to issuance of certificate or license, but specifies with some particularity the kind of liability insurance to be provided. It must be insurance which "shall bind the obligors thereunder to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such [motor] carrier." Construing that language in the light of other provisions, and of the purpose and intent of the whole act relating to the use of the public highways for business and commercial purposes, it was held that the legislature intended to require a policy which would provide direct liability to injured persons without regard to judgment against the insured motor carrier. It was further held that the terms of the statute must be read into the policy. In other words, that the insurance company must be held to have accepted the terms of the statute under which it furnished the policy to the motor carrier.

On the authority of the Jones case, appellee argues that the petition alleges, in effect, the existence of a policy under which injured third persons may proceed directly against the insurance company prior to judgment against the insured. The petition alleges that the contractor agreed that he would "carry liability insurance to protect the public" from injuries suffered by reason of the carrying on of the work under the road-improvement contract, and that in conformity with such agreement the contractor secured a policy with the appellant insurance company by the terms of which the

appellant "agreed to protect the public, including this plaintiff, from injuries arising out of the said grading work."

In the first place, we are not here dealing with any statute, which —as in the Jones case—is to be read into the policy in order to effectuate a broad statutory policy. We need not speculate as to whether the decision in the Jones case would have been the same if terms such as those alleged in the petition had constituted the statutory provisions then under scrutiny. Certainly they are by no means identical with the language there construed. The petition does not even allege that the highway commission had published general rules and regulations which require liability insurance with direct liability prior to judgment. The petition does not allege, specifically, that the policy provides for such a direct liability.

In the second place, the mere allegation that the contract for road-improvement work required "liability insurance" does not mean that it was therefore, and of necessity, a policy under which the insurer assumed direct liability immediately upon occurrence of an accident. It is generally held, for instance, and with sound reason, that a policy under the terms of which the insurer's obligation arises only when the liability of the insured has been established by judgment against him is equally one for "liability insurance" rather than for indemnity insurance. (29 Am. Jur. 796, 798, § 1061, and cases there cited; *Brandon v. St. Paul Mercury Indemnity Co.,* 132 Kan. 68, 70, 71, 294 Pac. 881.) What was said in the Jones case must be viewed in the light of the specific issue there determined under the statute involved. The distinction, as generally stated, between "liability insurance" and "indemnity insurance" is simply that in the former the coverage attaches when the liability attaches, while in the latter no action lies against the insurer until an actual loss in the discharge of the liability has been sustained by the insured (36 C. J. 1057; 6 Berry, Automobiles, 7th ed., 753, § 6.624). The time when the liability attaches is to be determined from the terms of the policy, either express or implied under statute or otherwise. In passing it may be noted that counsel for appellant admitted in oral argument that the policy involved is not an indemnity policy, but provides for direct liability immediately upon the securing of a judgment by the appellee against the contractor.

In the case of *Twichell v. Hetzel,* supra, strongly relied upon by appellee, joinder of the tort-feasor and insurance carrier as co-defendants was upheld. But the Hetzel case involved the public

motor carrier statute and was based upon the previous decision in the Jones case. Inasmuch as the Jones case had held the insurance carrier to a direct liability to third persons, coincident with that of the insured, it followed that both might be joined in an action arising out of the same transaction. It was said in the opinion that because direct liability existed under the statute, the action against the insurance carrier should be regarded as an action in tort, and therefore joinable with that against the principal tort-feasor. That was one way to put it, since the insurance company's obligation was based upon its contract to assume the insured's liability in tort. We think a better statement would have been that both defendants could be joined in the same action, even though one sounded in tort and the other in contract because direct and coincident liability existed as to both. In any event, the Hetzel case would only be persuasive here in case it can be said that the demurrer admits that the insurance carrier has a direct liability to the plaintiff, prior to judgment against the contractor. On that question we examine the allegations further.

As hereinbefore noted, the mere allegation that appellant had furnished a "liability insurance" policy is not sufficient. Nor does the petition set forth any provisions of the policy relating to the nature and extent of the liability assumed. It merely alleges that the insurer had agreed "to protect the public," etc. Such allegation not only falls short of defining the nature of such protection—essential to the stating of a then-existing cause of action—but constitutes merely a conclusion of the pleader and therefore not covered by admission under demurrer. Whether the terms of the policy "protect the public from injuries"—to say nothing of whether they provide present direct liability—depends upon what those terms are and not upon what the pleader alleges their meaning and effect to be. That is further made obvious by plaintiff's averment, in the same paragraph of the petition, that "the number of which and the extent of the liability" under the policy "are unknown to this plaintiff." Certainly under such allegations it cannot be said that a cause of action based on a then-existing liability was stated.

Appellee, invoking a familiar rule, urges a more liberal interpretation of the petition because there was no preliminary motion to make definite and certain. But if the petitioner did not know the extent of the liability existing under the terms of the policy, what value or significance would such a motion have had? Would it

merely have elicited a guess by the petitioner as to the extent of such liability? Furthermore, appellee had available a statutory means—which he admits he subsequently employed—for securing a copy and inspection of the policy and thus avoiding the pleading of mere conclusions as to what the policy provided.

If appellant had a direct liability, prior to judgment against the contractor, appellee had adequate means for ascertaining that fact and enforcing the liability. If no such liability exists under the policy, prior to judgment, appellant is entitled to have the contractor's liability first tried out on its merits without injection into such trial, by pleading or otherwise, of the subject of existing insurance. On that subject this court has spoken plainly upon more than one occasion. (See: Appleman, Automobile Liability Insurance, pp. 304-307; 6 Berry, Automobiles, 7th ed., 860, § 6.690.)

The petition alleged no facts constituting a then-existing cause of action against appellant. It follows that the court erred in overruling the demurrers to the petitions.

The judgments are reversed and the causes remanded with direction to sustain the demurrers and enter judgment for the defendant company.