Richard **BENDIS**, Robert H. **Mann, Jr.**, John **Pappajohn** and W. Terrence **Schreier, Plaintiffs–Appellants,**

v.

**FEDERAL INSURANCE COMPANY,**
Defendant–Appellee.

90–3057.

United States Court of Appeals,
Tenth Circuit.

June 20, 1991.

Publication Ordered March 9, 1992.

Alan V. Johnson of Sloan, Listrom, Eisenbarth, Sloan & Glassman (Thomas J. Wilder, with him on the briefs), Topeka, Kan., for plaintiffs-appellants.

Glen S. Feinberg of Wilson, Elser, Moskowitz, Edelman & Dicker, New York City (Robert L. Wehrman and Miriam Glueck of Polsinelli, White, Vardeman & Shalton, P.C., Kansas City, Mo., Joseph R. Colantuono and Bruce W. Beye, Overland Park, Kan., with him on the brief), for defendant-appellee.

Before LOGAN, SETH and TACHA, Circuit Judges.

SETH, Circuit Judge.

This appeal involves a declaratory judgment to determine the extent of coverage under a director and officer liability insurance policy. The trial court treated a motion to dismiss as a motion for summary judgment. Two questions are presented. First, whether the appellants made a claim against the appellee, Federal Insurance Company (Federal), during the policy period. Second, assuming a claim was validly made, whether the claim is barred under a specific policy exclusion. The trial court focused on the latter question and granted summary judgment in favor of Federal. We agree with the decision of the trial court and also affirm the judgment for the reason that appellants failed to make a "claim" during the relevant policy period.

Appellants Richard Bendis, Robert H. Mann, Jr., John Pappajohn and Terrence Schreier are former officers and directors of the Continental Healthcare Systems, Inc. (CHSI), a company providing computer software to hospitals. Appellee, Federal Insurance Company, issued a "claims made" policy covering executive liability and indemnification to the officers and directors of CHSI. The policy states, "THIS IS A CLAIMS MADE POLICY. Except as otherwise provided herein, this policy covers only claims first made against the Insured during the Policy Period." (Emphasis in original.) The policy was effective between May 1, 1986 and May 1, 1987.

On June 10, 1986, CHSI merged with TBG, Inc. This merger resulted in two lawsuits, one of which is relevant to the present appeal. On June 9, 1988, TBG filed an eleven-count suit against appellants, their accounting firm Ernst & Whinney, and their law firm Shook, Hardy & Bacon. TBG contends that appellants provided fraudulent and misleading information regarding the financial status of CHSI. Two of the eleven counts against appellants (counts X and XI) allege common law fraud and misrepresentation.

The TBG lawsuit is relevant to the present suit because appellants want Federal to cover potential losses stemming from counts X and XI. Appellants concede that the first nine counts involve actual or alleged violations of securities laws and thus are excluded under exclusion (h). Exclusion (h) states:

"The Company shall not be liable under this policy to make any payment for Loss in connection with any claim(s) made against any Insured Person(s):

. . . .

"(h) where all or part of such claim is, directly or indirectly, based on, attributable to, arising out of, resulting from or in any manner related to any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Public Utility Holding Act of 1935, any state Blue Sky or securities law, all as they may be amended, or any other law relating to securities transactions, or any of their amendments."

Appellants argue, however, that counts X and XI do not arise out of securities law violations. The district court disagreed and concluded that exclusion (h) covered all eleven counts raised in the TBG suit.

We review the district court's summary judgment ruling de novo taking all the evidence and any possible inferences from the evidence in the light most favorable to

the party opposing the motion. *Laidley v. McClain*, 914 F.2d 1386, 1390 (10th Cir. 1990). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■■■ The terms of Federal's insurance policy are construed applying the law of the state in which the policy was written, in this case Kansas. Under Kansas law, the intent of the parties is determined from the instrument as a whole and the circumstances of the parties. *Kansas State Bank & Trust v. Emery Air Freight*, 656 F.Supp. 200, 202 (D.Kan.1987) (citing *American Media, Inc. v. Home Indemnity Co.*, 232 Kan. 737, 658 P.2d 1015 (1983)). When terms are ambiguous or uncertain, the construction favoring the insured should prevail. *Id.* A policy is ambiguous when it "contain[s] language of doubtful and conflicting meaning as determined from a natural and reasonable reading." *Kansas State Bank*, 656 F.Supp. at 202 (citing *Dronge v. Monarch Ins. Co. of Ohio*, 511 F.Supp. 1, 4 (D.Kan.1979)). Exclusions and limitations in a policy are narrowly construed. *Id.*

■■■ Before addressing the applicability of the exclusions in Federal's policy, a threshold issue exists as to whether appellants introduced sufficient evidence to establish that a claim was made within the relevant policy period. Neither party disputes the fact that the TBG lawsuit was filed on June 9, 1988, more than a year after the policy's coverage ended on May 1, 1987. The dispute centers on whether appellants made a claim prior to May 1, 1987.

Appellants' argument that such a claim was made rests exclusively on the affidavit of Thomas W. Van Dyke. The relevant portions of the affidavit state as follows:

"3. Following the acquisition of CHSI by TBG, Inc. in the late summer and fall of, 1986, I represented Schreier in negotiations with TBG, Inc. and its attorney concerning the termination of Schreier's employment by TBG, Inc.

"4. During said negotiations, in late 1986, Richard Cutler, attorney for TBG, stated to me that TBG, Inc. believed it had a strong case against Schreier and Richard Bendis, former president of CHSI, and possibly others, including other directors, attorney and accountants, for fraud and/or negligent misrepresentation. *Cutler further stated that TBG, Inc. was not going to pursue these claims against Schreier and Bendis alone since they did not believe either gentleman had 'a deep enough pocket'.*"

(Doc. 17, Exhibit 3) (emphasis added). Appellants contend that because the Federal policy does not contain a definition of what constitutes a "claim", the term "claim" should be construed in light of what a reasonable person in the position of the insured would understand the term to mean. Appellants believe that such a reasonable person would define a claim as "an assertion", "a demand", "a challenge", or "a pretense" first made against the insured during this policy period. Appellants' Reply brief at 5, 6 (quoting *Home Life Ins. Co. v. Clay*, 13 Kan.App.2d 435, 773 P.2d 666 (1989)).

Appellants' argument must fail. The specific language of the Van Dyke affidavit states that in late 1986 TBG was *not* going to pursue claims it may have had against Schreier and Bendis because they did not have "a deep enough pocket". This language is identical to the language cited in *Home Life* by the Kansas Court of Appeals to uphold the trial court's finding that an insured did not have notice of a potential claim of liability. The relevant finding of the trial court quoted in *Home Life* stated:

"13. ... At the second meeting in the bank with Bert Blackard, Tom Coughlin the attorney for Home Life Insurance Company told [Bert] Blackard that *Home Life would not sue the bank because there was not enough money involved,* and that Home Life wanted to avoid adverse publicity."

*Home Life*, 773 P.2d at 676 (emphasis added). Although it was implied that the insurance company could have sued the bank, the Kansas court was unwilling to assume the bank had notice from Home Life's statement that it would not sue.

Similarly, in the present case Bendis and Schreier were told that TBG was not going

to sue them. Although one could imply from this statement that such a suit was possible, a reasonable person would not assume from this negative statement that a claim was being made. Therefore, we find that Van Dyke's affidavit by itself does not establish that a claim was made during the policy period. *See also Winkler v. National Union Fire Insurance Company of Pittsburgh,* 930 F.2d 1364, 1367 (9th Cir. 1991) (threat of legal action is a potential claim not an actual claim made); *MGIC Indem. Corp. v. Home State Sav. Ass'n,* 797 F.2d 285, 288 (6th Cir.1986) (the potential for demands cannot be equated with claims being made).

■ Moreover, even assuming appellants satisfied the threshold issue of whether a claim was made, appellants' argument that policy exclusion (h) does not apply to counts X and XI is incorrect. After thoroughly reviewing the record, we agree with the finding of the district court that the common law tort claims forming the basis of counts X and XI rely on the same factual allegations that form the basis of the securities violations alleged in the other counts.

Accordingly, the judgment of the United States District Court for the District of Kansas is AFFIRMED.