S. Ronald AKS, D.D.S.; Glen Henson; and James E. Williams, D.O., Individually and as Representatives on Behalf of the Putative Class of Which They are Members, Plaintiffs,

v.

The SOUTHGATE TRUST COMPANY; the Southgate Bank; John J. Bennett; Compensation Programs, Inc. of Kansas City; and Integrated Financial Services, Inc., Defendants,

Federal Insurance Company, Garnishee.

No. 92–2193–JWL.

United States District Court, D. Kansas.

Jan. 7, 1994.

John M. Klamann, Payne & Jones, Chtd., Overland Park, KS, Kenneth B. McClain, Humphrey, Farrington & McClain, Independence, MO, for plaintiffs.

Dennis L. Davis, Tamara Wilson Setser, Cheryl Bloethe Linder, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, for Southgate Bank.

Lawrence J. Zimmerman, F. Allen Speck, Daniel J. Flanigan, McDowell, Rice & Smith, P.C., Kansas City, MO, Michael T. Halloran, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, MO, Sandra S. Watts, Kenneth C. Brostron, Margaret M. Mooney, Lashly & Baer, P.C., St. Louis, MO, for John J. Bennett, Compensation Programs, Inc. of Kansas City, Integrated Financial Services, Inc.

John J. Bennett, pro se.

Kent S. Jackson, Joe B. Whisler, Cooling & Herbers, P.C., Kansas City, MO, for Eric E. Ulmer, Dr. Bernard Gould, Dr. Don Davis, Dr. Vernon Debus, Dr. James Trimmer.

Juliann W. Graves, Benny J. Harding, Ronald S. Weiss, James F.B. Daniels, David J. Weimer, Berman, DeLeve, Kuchan & Chapman, Kansas City, MO, for Official Equity Sec. Holders' Committee.

Matthew J. Verschelden, Paul E. Donnelly, Tammy L. Womack, Stinson, Mag & Fizzell, Kansas City, MO, Thomas B. Alleman, Vial, Hamilton, Koch & Knox, Dallas, TX, for Federal Ins. Co.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter comes before the court on plaintiffs' motion for partial summary judgment (Doc. # 265), the motion of garnishee Federal Insurance Company for summary judgment (Doc. # 269) and on the motion of Federal Insurance Company to strike testimony (Doc. # 295). This is a garnishment action in which plaintiffs, individually and on behalf of a class of plaintiffs settling with the Southgate Trust Company, seek the collection of insurance proceeds in the amount of $2,000,000.00 from the Federal Insurance Company in satisfaction of a judgment obtained against Southgate in December of 1992. Plaintiffs seek partial summary judgment on a variety of issues, including the meaning of certain general provisions of the insurance agreement between the parties and of pertinent exclusions. Garnishee seeks summary judgment on many of the same issues. For the reasons set forth below, the court denies garnishee's motion for summary judgment, denies in part and grants in part plaintiffs' motion for partial summary judgment, and denies garnishee's motion to strike as moot.

### I. Facts

The following facts are uncontroverted for purposes of the motions now before the court. In May of 1992, plaintiffs, individually and on behalf of the class, filed a complaint with this court alleging claims against the Southgate Trust Company and other entities and persons under the Employee Retirement Income Security Act, 29 U.S.C.A. § 1001 et seq. ("ERISA"). Each of the plaintiffs were participants or beneficiaries of ERISA qualified pension plans or profit-sharing plans, some of the assets of which formed part of the Southgate Trust Company Master Trust for Employee Trusts ("Master Trust"). Southgate Trust Company ("Southgate") was a trustee for the Master Trust.

Plaintiffs alleged certain funds were removed from the Master Trust for investment into Master Mortgage Investment Fund, Inc., and the Master Mortgage Fund Trust Guaranteed Plus Fund ("Guaranteed Plus Fund"). They alleged the investment of these funds in Master Mortgage Investment Fund, Inc. ("MMIF"), and the Guaranteed Plus Fund was inappropriate and unlawful and directly resulted in damages and pecuniary loss. They further alleged that Southgate breached certain fiduciary duties under ERISA, and that Southgate was also liable for the breaches of any and all co-fiduciaries.

The certificate of incorporation of MMIF states its purposes are:

(a) To operate in such a manner as to qualify as a Real Estate Investment Trust under the Internal Revenue Code of 1986, and in such capacity to commit to, originate, invest in, fund, hold, administer, enforce, earn principal and interest on, derive income from, purchase and sell Loans secured by interests in real estate or other security; to invest in, purchase, hold, operate, lease, sell and derive income and gains from interests in real estate; and to make and profit from such other investments and conduct such other activities as the Board of Directors shall determine from time to time; and

(b) To engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of Delaware.

MMIF filed a voluntary petition for bankruptcy with the United States Bankruptcy Court in the Western District of Missouri on April 17, 1992.

At the time of the events at issue in this case, Southgate was insured by Federal Insurance Company ("Federal") under Policy No. 7022–50–59(A) ("the policy"). The policy is entitled "Indemnity Insurance Policy" and insures Southgate up to a limit of $2,000,-000.00 per policy year, with a deductible in the amount of $150,000.00 per claim. The policy contains the following provisions:

Section I. Insuring Agreements

A. To indemnify the **Insured Entity** for **Loss** which the **Insured Entity** shall become legally obligated to pay as a result of any **Claim** first made against the **Insured Entity** and reported in writing to the Insurer during the **Policy Period** or, if elected, the **Extended Reporting Period** arising out of any **Wrongful Act** committed by

the **Insured Entity** during or prior to the **Policy Period** while performing a trust department function permitted by law.

Section III. Definitions

E. "**Wrongful Act**" shall mean any actual or alleged error misstatement, misleading statement, act or omission or neglect or breach of duty by the **Insured** which arises solely from the **Insureds** performing, ratifying or acquiescing in a trust department function permitted by law.

G. "**Loss**" shall mean any amount that the **Insureds** shall become legally obligated to pay for any **Claim** or **Claims** made against the **Insureds** for **Wrongful Acts** as to which coverage applies, and shall include, but not be limited to damages, judgments, settlements, and reasonable **Defense Costs,** provided always, such **Loss** shall not include amounts otherwise reimbursable to the **Insureds** by the trust, estate, plan or fund and/or any similar entity and/or the sponsor of any such trust, estate, plan or fund and/or any other similar entity . . . .

Section IV. Exclusions

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Insureds:**

(G) based upon, arising out of, relating to, in consequence of, or in any way involving the insolvency, conservatorship, receivership, bankruptcy or liquidation of any bank, banking firm, investment company, investment banker or any broker or dealer in securities or commodities, or other such organizations of a similar nature, or the failure to pay or suspension of payment by such entities;

Section VI. Defense Costs

D. The **Insureds** shall not admit any liability for or settle any **Claim** or incur any **Defense Costs** without the prior written consent of the Insurer, whose consent shall not be unreasonably withheld. The Insurer shall not be liable for any admissions, settlements or **Defense Costs** to which it has not consented in writing.

Endorsement No. 2

[T]he Insurer shall not be liable to make any payment for Loss based upon, attributable to, or arising out of:

1. Any recommendation of or in [sic] actual investment in specialty investments other than commonly traded securities including, but not limited to real estate, precious metal, commodities, or other futures, restricted securities, oil and gas leases, cattle trusts, limited partnerships or other similar speculative investments by the Southgate Trust Company.

In May of 1992, Federal received from Southgate a copy of plaintiffs' class action complaint, as well as a copy of the plaintiffs' settlement demand as it then existed. In a letter dated June 26, 1992, Federal provided Southgate with what it terms a 'coverage position'. The pertinent parts of the letter provided as follows:

On behalf of the Federal Insurance Company, we acknowledge receipt of the Class Action Complaint filed in the above-referenced matter on May 21, 1992 which we reviewed for coverage. . . . Based on that review, we must deny coverage at this time for the reasons discussed below.

. . . To the extent a qualified Wrongful Act has been alleged in the Complaint, the Southgate Trust Company appears to qualify as an Insured for whom coverage under the Policy is potentially applicable. However, we must deny coverage for the Southgate Trust Company, for the following reasons.

[The letter then states that Section IV (G), Endorsement No. 2, Section III (G), and Section IV, Exclusion (C) of the policy prevent coverage.]

. . . Federal bases its coverage position on the allegations in the Complaint that was submitted and the presently known facts. If there are additional allegations or facts that develop through the course of discovery and further pleading, we expressly reserve rights under the Policy and available at law to reserve our rights, deny coverage or rescind the Policy based on other provisions of the Policy including statements and omissions in the application.

After Federal denied coverage, Southgate informed Federal, by letter dated July 21,

, that it considered the denial "to be a breach of the contractual obligations" of the insurance company, and that "Federal has forfeited its right to prior approval of any settlement which The Southgate Trust Company may deem to be in its best interest."

Subsequently, Southgate negotiated a settlement with plaintiffs and a stipulation of settlement was signed and filed with this court on November 12, 1992. The settlement was never submitted to Federal for approval. Southgate settled the plaintiffs' claims for $2,200,000, and on December 24, 1992, this court entered an order and final judgment in favor of plaintiffs in that amount. The stipulation provided that Southgate would pay $200,000 and that the remaining judgment would be "paid and satisfied by execution or garnishment against Southgate's insurance policy or insurer, and/or by proceeding against said policy or insurer upon an Assignment of Claims, to be executed and delivered by Southgate Trust Co. pursuant to the . Stipulation of Settlement." An assignment of claims and a covenant not to execute were subsequently signed by the parties and filed with the court on April 9, 1993. The covenant not to execute provided that plaintiffs would not execute on any other personal or real property of Southgate in order to satisfy the remaining $2,000,000 portion of the judgment.

## II. Standard For Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). The court views the evidence and draws any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Hall v. Bellmon,* 935 F.2d 1106, 1111

(10th Cir.1991). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

## III. Coverage Under the Policy

Federal argues that the policy issued to Southgate is an indemnity policy and insures Southgate only against "actual loss." By the term actual loss, Federal seems to mean Southgate is required to actually pay an amount or incur a loss such that reimbursement is appropriate. Federal contends Southgate has suffered no actual loss. It argues that according to the policy, it need only indemnify Southgate for losses which it is "legally obligated to pay" and that as a result of the assignment and the covenant not to execute signed by plaintiffs and Southgate, Southgate is not legally obligated to pay anything. Thus, Federal argues there is no coverage under the policy and it is entitled to summary judgment on this ground. Plaintiffs contest Federal's construction of the insurance agreement and seek partial summary judgment in their favor to the effect that there has been a loss which is covered under the policy as a matter of law.[1] As is discussed further, the court finds that the policy does not condition or limit Federal's obligation to amounts actually paid by Southgate. In addition, the court finds that the covenant not to execute does not alter Federal's liability and that plaintiffs are entitled to recover any amount that Southgate would have been entitled to recover had Southgate not assigned to plaintiffs all rights under the insurance agreement.

The insured bears the burden to show that a loss suffered is of the type included within the general coverage provisions of an insurance agreement. *Dronge v. Monarch Ins. Co. of Ohio,* 511 F.Supp. 1, 4–5 (D.Kan.1979); *Baugher v. Hartford Fire Ins.*

---

1. Plaintiffs first argue that Federal has waived or is estopped from asserting that the policy is one that insures against actual loss because it did not so state in its letter of June 26, 1992 denying liability on certain specific grounds. However, because the court finds in favor of plaintiffs on the issue of the interpretation of loss under the policy, plaintiffs waiver argument need not be addressed.

*Co.*, 214 Kan. 891, 522 P.2d 401 (1974).[2] As assignee of the rights under the policy, plaintiffs bear the initial burden to show the loss suffered is covered. When determining the scope of the provisions of an insurance policy, "the test is not what the insurer intended the printed language to mean, but rather what a reasonable person placed in the position of the insured would have understood the words to mean." *Fancher v. Carson–Campbell, Inc.*, 216 Kan. 141, 145, 530 P.2d 1225, 1229 (1975). Because an insurer prepares its own contracts, it has a duty to make its meaning clear. *Blue v. Aetna Life Ins. Co.*, 208 Kan. 937, 940, 494 P.2d 1145, 1148 (1972). If a provision is susceptible of more than one reasonable interpretation, the interpretation more favorable to the insured must prevail. *Id.*

■ Federal argues that because the policy is titled an "Indemnity" policy and because it states it will "indemnify" the insured for loss, the agreement insures only against "actual loss." Federal argues that, by definition, an indemnity policy requires the insured make payment on a judgment in order to incur a loss and have standing to bring an action against the insurer. Federal relies too heavily on the title of the policy in interpreting the scope of coverage. The label attached to a policy is not determinative of the type and scope of coverage provided. *Burks v. Aldridge*, 154 Kan. 731, 735, 121 P.2d 276 (1942); *see also Blanton v. Kansas City Cotton Mills Co.*, 103 Kan. 118, 122, 172 P. 987 (1918) ("Attention is called to the use of the word *indemnify* in the contract, which it is contended carries the idea of a reimbursement for losses; but the term has other meanings and is no more controlling than the statement at the head of each of the policies that it is a 'liability' policy."). More importantly, to determine the time when liability attaches the court must examine the specific provisions of the policy. *Burks*, 154 Kan. at 735, 121 P.2d 276 (1942) (citations omitted). It may not simply attribute to the policy some broad definition of the term "indemnity."

The policy states that Federal will indemnify against loss which the insured becomes legally obligated to pay. Loss is defined as any amount the insured becomes legally obligated to pay for any claim made against the insured for wrongful acts as to which coverage applies, and includes damages, judgments and settlements. Federal argues the word indemnify necessarily implies actual loss. The term 'indemnify,' however, is subject to various meanings. In its most general sense, it means simply to "secure or protect against hurt or loss or damage" and does not imply payment or that an insured incur actual pecuniary loss. Webster's Third New International Dictionary 1147 (1986); Black's Law Dictionary 769 (6th ed. 1990).

■ Nowhere in the policy does it state that Federal will reimburse the insured only after a loss has been actually sustained or paid in satisfaction of a judgment. *See Blanton*, 103 Kan. at 121, 172 P. 987 (absence of such language indicates intent to insure against liability). An insurance agreement must be construed as a whole. *Farm Bureau Mutual Ins. Co. v. Horinek*, 233 Kan. 175, 660 P.2d 1374 (1983). In reading the entire policy, it is significant that the term "actual loss" is never used. Rather, the policy repeatedly refers to indemnification for amounts which the insured becomes legally obligated to pay. *See Waugh v. American Casualty Co.*, 190 Kan. 725, 731, 378 P.2d 170, 176 (1963) (policy in which insurer agrees to pay damages with which the insured may be legally charged or for which there has been a final judgment, is generally considered a contract of liability, rather than one of indemnity). If Federal intended to insure only against actual loss suffered by Southgate or to reimburse only for amounts actually paid, it certainly could have so stated in its policy.[3] The court finds that the terms of the policy require the insurer to pay the

---

2. The terms of an insurance policy are construed applying the law of the state in which the policy was written, in this case, Kansas. *Bendis v. Federal Ins. Co.*, 958 F.2d 960, 962 (10th Cir. 1991).

3. Moreover, section VIII (D) of the policy does not impose the requirement of actual payment by the insured as a condition to bringing an action against Federal. It requires instead that the insured's obligation be finally determined by either adjudication or written agreement.

insured for loss which the insured is legally obligated to pay and *not* for loss actually incurred or amounts actually paid.

 The issue thus becomes whether Southgate was or is legally obligated to pay anything. The court finds that once there was a settlement and a final judgment, Southgate became legally obligated to pay. Absent bad faith or fraud, a settlement is enforceable under the law as an agreement between parties. *Lewis v. Gilbert*, 14 Kan. App.2d 201, 202, 785 P.2d 1367, 1368 (1990). Obviously, a valid final judgment is also enforceable. Moreover, the policy issued to Southgate specifically contemplates that the insured can become legally obligated to pay both settlements and judgments and states that both types of obligations are covered.[4] In its order filed December 24, 1992, this court issued a final judgment pursuant to a stipulated settlement "in favor of Plaintiffs, individually, and on behalf of the Settlement class, and against the Southgate Trust Co., in the amount of Two Million Two Hundred Thousand dollars ($2,200,000)." *See Aks v. Southgate Trust Co.*, No. 92–2193–JWL, 1992 WL 401708, at *16 (D.Kan. Dec. 24, 1992). As of the date of that order, Southgate became legally obligated to pay the judgment under the terms of the policy issued to it by Federal.

Federal argues that the subsequent assignment and covenant not to execute altered Federal's liability under the policy.[5] It ar-

gues that once plaintiffs signed a covenant not to execute, Southgate was no longer legally obligated to pay the judgment. Federal fails to recognize that Southgate assigned to plaintiffs all of its rights under the policy. Plaintiffs are entitled to recover all that Southgate could recover under the policy.

 Federal's contention that covenants not to execute relieve an insurer from an obligation under a policy is contrary to Kansas law. In *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990), the Kansas Supreme Court examined the validity and use of covenants not to execute negotiated before entry of a final judgment. The court upheld the use of such covenants provided they are reasonable and made in good faith. *Glenn*, 247 Kan. at 317, 799 P.2d at 92. The court cited with approval cases from other jurisdictions standing for the proposition that the existence of a covenant not to execute and an assignment of claims should not permit an insurer to escape its obligations under an insurance agreement. *Id.* (citing *Kagele v. Aetna Life*, 40 Wash.App. 194, 198, 698 P.2d 90, 93 (1985)). Thus, the court finds that Federal cannot avoid liability simply because Southgate assigned its rights under the policy to plaintiffs in this action.

Therefore, the court finds that the policy at issue here does not require that Southgate actually pay a claim before Federal's liability attaches and denies Federal's motion for summary judgment on this ground.[6]

4. The agreement states:
 [T]he insurer agrees ... to indemnify the insured entity for ... any amount that the Insureds shall become legally obligated to pay for any Claim or Claims made against the Insureds for Wrongful Acts as to which coverage applies, and **shall include**, but not be limited to damages, judgments, settlements, and reasonable Defense Costs.... (emphasis added).

5. In support of its position, Federal cites to *Stubblefield v. St. Paul Fire & Marine Ins. Co.*, 267 Or. 397, 517 P.2d 262 (1973), which held that where a plaintiff had executed a covenant not to execute against a doctor for any amount in excess of $5,000, the doctor was not legally obligated to pay any amount in excess of that sum within terms of the liability policy. It further held that by the terms of the assignment, plaintiff acquired no rights which were enforceable against the insurer. *Id.; in accord Bendall v. White*, 511 F.Supp. 793, 794–5 (N.D.Ala.1981). Not only are these cases not binding on this court, they

may be distinguished. In *Stubblefield*, the court noted its holding was tied to the facts presented and specifically pointed out that the defendant was not insolvent when the settlement was made. 267 Or. at 401, 517 P.2d at 265. In this case, Southgate was unable to pay the $2,200,000.00 judgment. In *Bendall*, unlike the present situation in Kansas, there was no pronouncement of state law dealing with the effect of a covenant not to execute. 511 F.Supp. at 795.

6. The court does not now decide that a "wrongful act" was committed by Southgate as defined in the policy. Plaintiffs argue that Federal concedes that a wrongful act was committed. However, in its motion papers, Federal specifically denies that Southgate committed a wrongful act under the agreement, and argues that if there was no wrongful act, there is no coverage. The court finds that issues of fact remain as to whether a wrongful act was committed. So, to the extent that plaintiffs seek partial summary judg-

*IV. Exclusions*

Federal contends that plaintiffs' claimed damages arise from the insolvency of an investment company or similar entity and are barred by an exclusion in the insurance agreement, and seeks summary judgment on this ground. Plaintiffs' counter that material issues of fact exist as to whether this insolvency exclusion applies and asks the court to deny Federal's motion. Plaintiffs further seek partial summary judgment in their favor to the effect that several other exclusions raised by Federal as a defense to liability in its answer to the order of garnishment do not apply to preclude coverage. For the reasons set forth below, the court denies Federal's motion for summary judgment on the applicability of the insolvency exclusion, and grants plaintiffs' motion for partial summary judgment on the other exclusions Federal claims are applicable here.

*1. Specialty Investment Exclusion—Endorsement No. 2*

 Plaintiffs argue that Federal has not met its burden to show that Endorsement No. 2 of the policy, the so-called specialty investment exclusion, applies to preclude coverage under the circumstances of this case. The burden of proof rests with the insurer to establish facts sufficient to show that an exclusion found in the insurance agreement applies. *Watson v. Jones,* 227 Kan. 862, 867, 610 P.2d 619, 624 (1980) (citing *Adventure Line Mfg. Co. Inc. v. Western Casualty & Surety Co.,* 214 Kan. 820, 822, 522 P.2d 359 (1974); *Southards v. Central Plains Ins. Co.,* 201 Kan. 499, Syl. 2, 441 P.2d 808 (1968)). The court agrees with

plaintiffs, and finds that Federal has not set forth sufficient facts to demonstrate that Endorsement No. 2 applies.

The endorsement states that Federal is not liable for any loss attributable to or arising out of "any recommendation" or "actual investment" in "specialty investments," and lists examples of such investments. Federal has not met its burden to show that Southgate recommended or invested in any of the securities of the MMIF or the Guaranteed Plus Fund. In fact, both parties seem to agree that Southgate did not take an active role in either advising investment in or actually investing in the MMIF or the Guaranteed Plus Fund. *See Garnishee's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment, p. 8 ¶ 5* ("The advice to invest did not come from Southgate. . . .").[7] It seems Southgate merely transferred funds and made them available for investments in the MMIF.

Federal argues instead that the exclusion is broad enough to cover the act of transferring funds, or acting as an agent in connection with the administration of the trust. This court disagrees. The clear language of the policy states "any recommendation of" or "actual investment in" a specialty investment. These terms are not ambiguous. "If the language of a policy of insurance is clear and unambiguous, the words are to be taken and understood in their plain, ordinary and popular sense, and there is no need for judicial interpretation or the application of rules of liberal construction; the court's function is to enforce the contract according to its terms." *American Media, Inc. v. Home Indemnity*

---

ment on the issue of whether a wrongful act has been committed, their motion is denied.

**7.** See also the affidavit of Marsha St. Clair, President of Southgate, filed with plaintiffs' motion for partial summary judgment (Doc. # 275), in which she states that Southgate never recommended, sold or made an investment in MMIF; as well as, the deposition of Stuart Ronald Aks, D.D.S., at page 30 (Exhibit 25 of Federal's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment) which provides:

Q. With respect to funds that were held by Southgate Trust as co-trustee, who made the investment decision for those funds?

A. Okay. The investment decisions were ultimately made by me, with the assumption that I was getting the right information.

Q. And when you were contacted by Southgate Trust, would you ask them to provide you with information?

A. All I ever got from Southgate Trust was a report of what funds were in their possession.

The court notes that it did not consider the second affidavit, nor the deposition testimony, of Marsha St. Clair submitted by plaintiffs as part of the response to garnishee's motion (Doc. # 289). Thus, it is unnecessary to decide Federal's motion to strike this testimony and Federal's motion (Doc. # 295) is denied as moot.

*Co.*, 232 Kan. 737, Syl. 5, 658 P.2d 1015 (1983).

█ Contrary to Federal's argument, it is not sufficient that Southgate 'touched' the funds used in the investments. Even if the term recommend is ambiguous, Federal's interpretation can not prevail. Exclusions in a policy are narrowly construed and if an exclusion is susceptible of more than one meaning, the more narrow construction controls. *Bendis v. Federal Ins. Co.*, 958 F.2d 960, 962 (10th Cir.1991); *Blue v. Aetna Life Ins. Co.*, 208 Kan. 937, 494 P.2d 1145, 1148 (1972) (citing *Fowler v. United Equitable Ins. Co.*, 200 Kan. 632, 633–4, 438 P.2d 46, 48 (1968)). If Federal meant for the provision to cover any and all activity in connection with a specialty investment, it should have drafted its policy in such a way as to effectuate that intent. Absent evidence that Southgate recommended investments or invested in the MMIF or the Guaranteed Plus Fund, the court will not find the exclusion applicable. Federal has not produced such evidence in either its motion papers or in its papers in opposition to plaintiffs' motion to suggest that Southgate recommended any such investments. Thus, the court finds that Endorsement No. 2 is not applicable to the circumstances of this case as a matter of law.[8]

### 2. Insolvency Exclusion

█ Federal argues that it is not liable to plaintiffs on any claim because all of their damages arise out of or relate to the insolvency of an investment company or organization of a similar nature (MMIF) and are, thus, excluded from coverage under section IV, subsection (G) of the insurance agreement. Plaintiffs counter that MMIF is not an investment company and that all or part of the losses suffered occurred before MMIF voluntarily declared bankruptcy. Plaintiffs further argue that MMIF was not insolvent when it filed for Chapter 11 protection, but rather filed for protection in order to prevent the foreclosure of a large portion of its assets by an oversecured creditor. The court finds that material issues of fact remain as to whether and how much of plaintiffs alleged losses arose out of or in connection with the alleged insolvency of MMIF. Moreover, issues of fact remain as to whether MMIF is an investment company or a similar company under the terms of the policy. Thus, the court finds this issue is better resolved at trial, and denies Federal's motion for summary judgment on this ground.

### 3. Miscellaneous Exclusions

Federal asserts, in its answer to plaintiffs' complaint and the order of garnishment, that several other exclusions apply to preclude coverage under the policy. For one, it asserts that the loss claimed by plaintiffs is one which results from fraud or dishonest acts by Southgate and is precluded from coverage. Second, it asserts the loss is one which results from "conflicts of interest" in which Southgate was engaged and is similarly precluded from coverage. And third, it asserts the loss alleged is one which results from intentional violations of ERISA and is barred. Plaintiff moves for partial summary judgment to the effect that none of these exclusions apply.

█ Plaintiffs first argue that Federal is estopped from asserting these exclusions because it denied liability on specific grounds in its June 26, 1992 letter and none of these were mentioned. They cite in support of their position the general rule in Kansas that when an insurer bases its refusal to pay a loss upon a forfeiture or failure to comply with particular conditions, it cannot thereafter maintain a defense based upon another condition, of which it then had knowledge, not referred to in its initial refusal to pay. *Pacific Indemnity Co. v. Berge*, 205 Kan. 755, 473 P.2d 48, 57 (1970). While plaintiffs are correct that waiver and estoppel may be invoked to forestall the forfeiture of an insurance contract, they fail to acknowledge that these equitable doctrines may not be used to expand the scope of coverage of a particular policy. *Ron Henry Ford, Lincoln, Mercury, Inc. v. National Union Fire Ins. Co. of Pitts-*

---

8. Because the court finds that Southgate did not advise or recommend investment in the MMIF, and finds that the exclusion cannot be read to include less direct involvement, the court need not decide whether the MMIF is in fact a special investment listed in the policy.

burgh, Pa., 8 Kan.App.2d 766, 769, 667 P.2d 907, 909 (1983). To deny Federal the right to assert these exclusions at this time could, potentially, have the effect of expanding the clear scope of the policy. *See Hennes Erecting Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 813 F.2d 1074, 1080 (10th Cir.1987) (while timely and complete disclosure of the reasons for denying a claim is preferable, waiver and estoppel cannot be used to increase the insurer's risk beyond the terms of the policy.); *Western Food Products Co. v. United States Fire Ins. Co.,* 10 Kan. App.2d 375, 699 P.2d 579, 584 (1985) (equitable relief of estoppel claimed by plaintiff inappropriate because it would operate to expand the plain scope of the insurance policy).

▋ The court finds that Federal is not estopped from asserting multiple exclusions in its answer to the order of garnishment as a defense to liability simply because it failed to mention each and every potentially applicable exclusion in its June 26th letter. *See Hennes Erecting Co.,* 813 F.2d at 1078–79 (insurer's failure to list an exclusion when it rejected insured's claim did not operate to eliminate that exclusion from the policy). However, the court finds that although Federal has properly raised the applicability of the three exclusions set out above, it has not met its burden to show that material facts exist as to whether they preclude coverage and plaintiffs are entitled to judgment as a matter of law against Federal as to each of the three asserted defenses.

▋ Federal has not offered any evidence in support of its claims that these exclusions apply. Federal seems to ignore these exclusions in its motion papers and relies instead on the specialty investment exclusion and the insolvency exclusion to disclaim liability. A party must offer evidence in support of its claims and may not merely rest on its pleadings in contesting a motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the court finds Federal has not met its burden to show that these exclusions apply, and partial sum-

mary judgment is granted in favor of plaintiffs on these specific issues.

## V. Conditions Precedent to Coverage

Federal argues that it is not liable under the policy because Southgate breached a material condition of the policy, namely it did not obtain Federal's prior written consent of the settlement. The court finds that Federal may not assert lack of consent to settlement as a defense to liability and that Southgate's failure to obtain consent is no bar to plaintiff's recovery in this case.

▋ Once an insurer denies liability, the insured may enter into a settlement with a third party without prejudicing its rights against the insurer. *First Hays Banshares, Inc. v. Kansas Bankers Surety Co.,* 244 Kan. 576, 583, 769 P.2d 1184, 1189 (1989) (citing *Vanguard Ins. Co. v. Polchlopek,* 18 N.Y.2d 376, 382, 275 N.Y.S.2d 515, 520, 222 N.E.2d 383, 386 (1966)). Federal denied liability as to the claims against Southgate in its June 26, 1992 letter. Once Federal denied liability, Southgate could properly attempt a settlement with plaintiffs.[9] As was succinctly put by the Tenth Circuit, "[p]rovisions prohibiting out-of-court settlements between an insured and a claimant without the consent of the insurer are not enforced when the insurer repudiates coverage or denies liability." *Franklin v. Oklahoma City Abstract & Title Co.,* 584 F.2d 964, 968 (10th Cir.1978) (citing *Simon v. Maryland Casualty Co.,* 353 F.2d 608, 612 (5th Cir.1965)); *Bunge Corp. v. London & Overseas Ins. Co.,* 394 F.2d 496, 497 (2d Cir.) (cited with approval in *First Hays Banshares, Inc.,* 244 Kan. at 583, 769 P.2d at 1189), *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968)). Thus, the court finds that Southgate was not required to get Federal's written consent to the settlement despite the consent provision in the insurance agreement, and plaintiffs are entitled to partial summary judgment to that effect.

▋ In addition, the court grants partial summary judgment to plaintiffs on the issue of the effect of Southgate's alleged failure to assert all available defenses. Federal con-

---

9. Moreover, in a letter to Southgate's counsel dated June 12, 1992, Federal advised Southgate to act in its best interests as to the $2,200,000.00 settlement demand by plaintiffs.

tends that Southgate failed to "assert all appropriate defenses and take all steps necessary in defense of any Claim" as is required by the insurance agreement. Plaintiffs argue that all appropriate defenses were raised in Southgate's answer to plaintiffs' complaint. Plaintiffs also have produced much evidence, including correspondence between opposing counsel, indicating that Southgate took lengthy steps to defend itself against the claims by plaintiffs. In its response to plaintiffs' motion, Federal has not even attempted to identify any defense that Southgate should have raised but did not. Nor has Federal produced evidence that Southgate failed to defend the action. Federal's opinion that Southgate should not have settled with plaintiffs is insufficient to raise an issue of fact.[10] Moreover, once Federal denied coverage in its June 26th letter, Southgate had the right to enter into settlement negotiations with plaintiffs in an attempt to mitigate damages. *First Hays Banshares, Inc.*, 244 Kan. at 583, 769 P.2d at 1189. Thus, Federal cannot claim that any action on the part of Southgate to effectuate a settlement after June 26, 1992 breaches the condition to 'defend' a claim. The court finds that Federal has not met its burden to show a material issue of fact exists as to whether Southgate failed to raise an appropriate defense or failed to take steps necessary in defense of the claims against it, and partial summary judgment is granted in favor of plaintiffs on this ground.

Finally, for purposes of clarity and completeness, the court finds that Federal's asserted defense that it has no obligation for fines, penalties, punitive, multiple, or exemplary damages is inapplicable. Plaintiffs have clearly stated in their motion for partial summary judgment that they do not seek, nor does the settlement with Southgate contemplate, such damages.

## VI. *Reasonableness of the Settlement*

 Plaintiffs move for partial summary judgment on the issue of the reasonableness of the settlement between the plaintiff class and Southgate, arguing that the settlement is reasonable and fair as a matter of law. Federal claims there is at least a triable issue of fact as to the reasonableness of the settlement.

 The insured bears the initial burden of showing that the settlement is reasonable in amount and entered into in good faith; however, the ultimate burden of persuasion rests with the insurer to show the contrary. *Glenn*, 247 Kan. at 318, 799 P.2d at 93 (adopting the reasoning of *Griggs v. Bertram*, 88 N.J. 347, 443 A.2d 163 (1982)).[11] While the court finds that plaintiffs have met their burden to make a prima facie showing that the settlement was reasonable and made in good faith, the court is not persuaded no material issue of fact remains. The Kansas Supreme Court has expressed a concern as to the reasonableness of settlements involving covenants not to execute where the insurer has not been a party to the settlement. "In this type of consent judgment case the settlement between the plaintiff and·the insured may not represent an arm's length determination of the value of the plaintiff's claim." *Glenn*, 247 Kan. at 318, 799 P.2d at 92. Thus, the court is reluctant to approve such a settlement without some degree of scrutiny. The court finds it cannot decide

---

**10.** Federal's argument that Southgate failed to supply information specifically requested is not persuasive. In its June 26th letter denying coverage, Federal does not indicate that it lacked necessary information to come to a decision on coverage or that Southgate was dilatory in supplying all essential materials. Federal is hard-pressed to argue that a lack of information prior to the June 26th letter is evidence of a lack of compliance on the part of Southgate to comply with the conditions of the policy.

**11.** The Kansas Supreme Court approved this burden of proof scheme when examining a settlement, assignment and covenant in the context of

a bad faith refusal to settle on the part of the insurer. The court finds, however, the scheme applicable in this instance as well. In *Glenn*, the court was concerned with possible collusion where the amount of a judgment assigned has been determined by agreement of the parties. 247 Kan. at 317, 799 P.2d at 92. In such a situation, the interests of the insured and the party asserting the claims are no longer adverse, and an environment is created that invites a certain amount of self-dealing which will necessarily affect the insurer. The same concerns and policy issues exist here where Federal was not a part of the settlement negotiations.

from the papers submitted thus far that the settlement was reasonable in amount and made in good faith as a matter of law. Because this issue is better resolved at trial, the court denies plaintiffs' motion for partial summary judgment on this ground.

### VII. Conclusion

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiffs' motion for partial summary judgment (Doc. # 265) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that garnishee's motion for summary judgment (Doc. # 270) is denied.

**IT IS FURTHER ORDERED** that garnishee's motion to strike testimony (Doc. # 295) is denied as moot.

**IT IS SO ORDERED.**